## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>CHINYERE UDEH,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)<br>)<br>)</td><td>Civil Action No. 20-cv-03745-LKG</td></tr>
<tr><td>v.</td><td>)<br>)</td><td>Dated: March 22, 2023</td></tr>
<tr><td>MARYLAND DEPARTMENT OF<br>PUBLIC SAFETY AND<br>CORRECTIONAL SERVICES,</td><td>)<br>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td>Defendant.</td><td></td><td></td></tr>
</table>

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Plaintiff, Chinyere Udeh, brings this employment discrimination action against the Maryland Department of Public Safety and Correctional Services (the "DPSCS") alleging discrimination upon the bases of national origin and retaliation, in connection with her employment as a Correctional Officer for the DPSCS, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.  The DPSCS has moved for summary judgment on Plaintiff's claims.  ECF No. 49.  This motion is fully briefed.  ECF Nos. 13; 49; 55; and 59.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court (1) **GRANTS-in PART** the DPSCS's motion for summary judgment and (2) **DISMISSES** this matter.

II.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

      A.      **Factual Background**

Plaintiff, Chinyere Udeh, brings this employment discrimination action against the DPSCS alleging discrimination upon the basis of national origin and retaliation in connection with her employment as a Correctional Officer for the DPSCS.  ECF No. 13.  In the remaining Counts in the amended complaint, Plaintiff alleges a hostile work environment claim based upon her national origin (Count I) and a retaliation claim based upon several alleged adverse employment actions, including the termination of her employment (Count II).  *See, generally id*.

Specifically, Plaintiff contends that she was repeatedly subjected to workplace harassment because of her national origin, and retaliated against for complaining about the harassment, during the course of her employment with the DPSCS.  *Id.*  As relief, Plaintiff seeks to recover, among other things, back pay, compensatory and punitive damages, attorney's fees, and other costs.  *Id*. at 2.

Plaintiff's Employment With The DPSCS

As background, Plaintiff was born in Nigeria, before immigrating to the United States. *Id.* at ¶ 4.  In December 2014, Plaintiff was hired to work as a Correctional Officer with the DPSCS.  *Id*. at ¶ 24.  Initially, Plaintiff was employed as a Correctional Officer I (probation) and assigned to the Baltimore City Correctional Center ("BCCC").  *Id*. at ¶¶ 25, 51.  In December 2015, Plaintiff was promoted to the position of Correctional Officer II.  *Id*. at ¶ 25.

The Alleged Harassment By Plaintiffs' Co-Workers

Plaintiff alleges that, "[o]n or about June 2015, [she] began what was to become a three-and-a-half-year pattern of experiencing harassment by coworkers and supervisors within the DPSCS."  *Id.* at ¶ 27.  Plaintiff alleges that the workplace harassment included derogatory comments toward her, such as: "African Bitch," "Go back to Africa," and "Y'all Africans came from your country to come steal our jobs here in America."  *Id*.

Plaintiff testified at her deposition that this "pattern" of harassing conduct began at the very beginning of her employment with the DPSCS.  ECF No. 49 at 3.  Plaintiff alleges

---

[1] The facts recited in this memorandum opinion and order are taken from the amended complaint, the DPSCS's motion for summary judgment and memorandum in support thereof.  *See* ECF Nos. 13; 49.  Unless otherwise stated, the facts recited herein are undisputed.

that, after she complained about the behavior of one harassing coworker, "Jefferson," the harassing "behavior kept increasing."   *Id.* at 4.

### Plaintiff Reports Fraternization By Officer Dukes

On July 6, 2017, Plaintiff observed her co-worker, Officer Dukes, "violate regulations" and she reported Officer Dukes to her supervisor.  *Id*. at 5.  Plaintiff testified during her deposition that, thereafter, Officer Dukes and her friends started to harass Plaintiff and attempted to get Plaintiff to change the matter of record that she had written about Officer Dukes to "say what I saw never happened or they would destroy my reputation in the department." *Id*. at 5-6. Plaintiff maintains that Officer Dukes' friends continued to harass her after Officer Dukes left the DPSCS.  *Id.*  But Plaintiff acknowledged during her deposition that this harassment was most likely retaliation for her having made a report about Officer Dukes' workplace conduct, rather than due to her national origin.  *Id*. at 6.

### The Threatening Note And Internal EEO Complaint

On December 19, 2017, BCCC's Major James Faison reported receiving a note in his mailbox, which stated:

> We will kill that bitch Youday if y'all keep putting her over here.
> Real Shit. Keep Away.  She keep trying to eat people's dicks.

ECF No. 13 at 6.  When presented with this note, Plaintiff advised that she did not feel comfortable working at BCCC.  ECF No. 13 at 6-7.

Plaintiff alleges that she was asked by management to sign a letter stating that she did not feel threatened, but she refused to sign the letter and was then excluded from the Officer's roll call and prohibited from entering the Officer dining room.  *Id*.  Plaintiff also alleges that, on or about December 31, 2017, another supervisor, Captain Flora Jones: (1) prevented her from working in the Master Control Post; (2) told Plaintiff that she needed to change her handwriting and the way she spoke; and (3) criticizing her for not being "American enough."  *Id*. at 7.

On January 12, 2018, Plaintiff filed a discrimination complaint with the DPSCS's EEO Office.  *Id*.

### Plaintiff's Medical Episodes At Work

It is undisputed that, between January and February 2018, Plaintiff suffered two medical episodes while at work, that resulted in her being transported by ambulance from the workplace to the Mercy Hospital Emergency Room.  ECF No. 13 at ¶¶ 49-50, 55-56.  First, on January 31,

2018, while Plaintiff was working at BCCC, Plaintiff felt "overwhelmed and stressed and [she] lost consciousness at work." *Id.* at 7.  After being taken to the Mercy Hospital Emergency Room for medical treatment, Plaintiff was released from the hospital.  *Id.*

Second, on February 15, 2018, Plaintiff felt "overwhelmed" and began having headaches and neck pain.  *Id.* at 8.  And so, she requested to be transferred by ambulance from the workplace to the Mercy Hospital Emergency Room, where she was treated and later released. *Id.*

During her deposition, Warden Tina Stump testified that she had "countless meetings" with Plaintiff during this time to discuss and accommodate Plaintiff's workplace concerns.  ECF No. 49 at 8.  Warden Stump also testified that Plaintiff appeared at her office "highly agitated, upset, [and] crying."  *Id.*  In addition, Warden Stump testified that, during one meeting, Plaintiff told her that Captain Jones "was going to kill her," and that the only reason offered by Plaintiff to explain her concern was that Captain Jones "had made her throw away lip balm and some sort of hand lotion."[2]  *Id.*

Warden Stump further testified that she grew concerned about whether Plaintiff was "physically and mentally well enough to be in the facility, to be in a position of custody and care of inmates," because of Plaintiff's two medical episodes and her agitated demeanor.  *Id.* at 31. Given this, Warden Stump requested that Plaintiff be referred to the State Medical Director for a fitness-for-duty evaluation.  *Id.* at 32-35.  And so, sometime after February 20, 2018, Plaintiff was placed on paid administrative leave, pending the results of the fitness-for-duty-evaluation. ECF No. 13 at 8.

Plaintiff's First Referral To State Medical Director

On February 21, 2018, Valerie Howard, Assistant Manager of the DPSCS's Employee Health Services Unit, submitted a referral for Plaintiff to undergo a workability examination at Workpro Occupational Health.  *Id.* at 8.  On February 28, 2018, Plaintiff reported to Dr. Ifeanyi Nwaneshiudu, an occupational medicine physician contracted by the State Medical Director's Office, for a fitness-for-duty evaluation.  *Id.*  After conducting his evaluation, Dr. Nwaneshiudu

---

[2] Warden Stump testified that the items that Plaintiff sought to enter the prison with (lip balm and hand lotion) are not permitted in the prison, and that all officers must undergo such searches as routine security. ECF No. 49 at. 8.

issued a report to the DPSCS's Employee Health Services advising that "it is my opinion that Plaintiff is not to return back to her regular job activities and continue her on administrative leave." *Id*.  In this regard, Dr. Nwaneshiudu stated that he had "concerns about [Plaintiff's] mental health status" and he referred Plaintiff for a psychiatric evaluation.  *Id*. at 8-9.

Thereafter, on April 2, 2018, Plaintiff reported for a psychological evaluation by Dr. Gabriel Newman, a licensed psychologist.  *Id*. at 9.  Dr. Newman also observed that "it is suspected that [Plaintiff] will not contend well with the challenges of this work, unless she is able to interpret and respond to situations appropriately, and to demonstrate better social skills and management."  *Id*. at 9-10.  And so, Dr. Newman concluded that, "in the event [Plaintiff] could be accommodated with a change of prison site, she could continue her work in a different locale, and her potential to succeed in this work will be judged by that process."  *Id*. at 9-11.

Dr. Newman's report was sent to Dr. Nwaneshiudu, who scheduled a follow-up evaluation with Plaintiff.  ECF No. 49 at 10.  The follow-up visit occurred on April 18, 2018.  *Id*.  Dr. Nwaneshiudu memorialized the evaluation in a report to Valerie Howard of the DPSCS's Employee Health Services' Unit dated April 20, 2022.  *Id*.  Dr. Nwaneshiudu stated that his recommendation, "which is in agreement with Dr. Newman on his psychiatric evaluation, [was] that Plaintiff could continue her regular job activities provided her agency can accommodate a change of work environment."  *Id*. at 10-11.

<u>Plaintiff Returns To Chesapeake Detention Center And The Charge Of Discrimination</u>

On June 6, 2018, Plaintiff returned to work and she was transferred to the Chesapeake Detention Facility.  ECF No. 13 at 11.  Plaintiff alleges that, while at Chesapeake Detention Facility, she "was harassed and threatened by staff."  *Id*. at 12.  Specifically, Plaintiff alleges that her vehicle was tampered with by unknown persons while parked outside of the prison.  *Id*.  But Plaintiff has not produced any evidence showing a link between the tampering with her vehicle and any coworkers or supervisors at the Chesapeake Detention Facility.  *Id*.

Plaintiff filed a charge of discrimination with the Maryland Commission on Civil Rights (the "MCCR") on July 31, 2018.  ECF No. 13 at 4.  Plaintiff subsequently supplemented her complaint to include claims related to the termination of her employment.  *Id*.

On November 1, 2018, Plaintiff was given the temporary duty assignment of working in the Jail Industries Building to provide administrative support to Zakaria Shaikh, who served as the chief medical consultant monitoring the health programs and services for detainees.  *Id*.  That

assignment lasted for two months, after which Mr. Shaikh asked that Plaintiff be reassigned.
ECF No. 49 at 11-12.  And so, Plaintiff was advised that she was being returned to her regular
duties as a Correctional Officer at the Chesapeake Detention Facility.  ECF No. 13 at 13.

On the day she was instructed to report for duty at the Chesapeake Detention Facility,
Plaintiff met with the facility's Acting Warden, Michelle Pacheco, and Plaintiff reported that
"she feared for her safety in the institution" and that "she did not want to go into the institution to
work."  ECF No. 49 at 12 (Transcript of Deposition Testimony of Warden Michelle Pacheco
("Pacheco Depo.").  Warden Pacheco testified that:

> When I met her, she was visibly upset, that she was in fear for her
> safety and that what she communicated to me was very confusing,
> and when asked she never gave a specific person of who she was
> in fear of her safety.

*Id*.  And so, Warden Pacheo testified that she contacted Deputy Commissioner of Pretrial
Detention and Services Leon King and requested approval to place Plaintiff on paid
administrative leave.  *Id*.

Deputy Commissioner King approved Plaintiff's administrative leave and advised
Warden Pacheco to tell Plaintiff to contact his office to schedule an appointment to meet with
him.  *Id*.  But Plaintiff went directly to the office of Deputy Commissioner Michael King to
address her concerns in person.  ECF No. 13 at 13.  During his deposition, Deputy Commissioner
King testified that he "was annoyed, because [Plaintiff] had been given an order not to come to
O'Brien House and [he] did not want to see her."  ECF No. 49 at 13-14.  In addition, Deputy
Commissioner King testified that he was concerned after having been shown by numerous
officers several videos that Plaintiff had posted on social media in which she said things that
were "crazy and out there."  *Id*.

<u>Plaintiff's Second Referral To State Medical Director</u>

On April 25, 2019, Plaintiff underwent another workability examination by the State
Medical Director's office.  ECF No. 13 at ¶ 100.  Because Plaintiff expressed concerns about the
conclusions reached during her prior evaluation, Plaintiff was evaluated by Dr. Michael
Williams, an independent contractor hired to perform occupational evaluations on behalf of the
State Medical Director.  ECF No. 13 at ¶¶ 100-01.

After Dr. Williams conducted his initial evaluation of Plaintiff, he submitted a report to
the DPSCS concluding that, "[b]ased on the medical records reviewed, history provided by

Plaintiff and on physical examination today, it is my opinion that Plaintiff is unable to safely, consistently, and reliably perform her essential job duties without reasonable accommodation at this time." ECF No. 13 at ¶ 101. Dr. Williams also referred Plaintiff for an independent psychological evaluation. *Id.*

On May 3, 2019, Plaintiff was evaluated by Licensed Psychologist, Patricia A. Jenkins, PhD, "to aid in determining her ability to perform the duties of her position as a Correctional Officer for the Maryland Department of Public Safety and Correctional Services." ECF No. 13 at ¶ 103. Dr. Jenkins issued a written report to Dr. Williams concluding that, "[b]ased on this evaluation, Plaintiff is not psychologically able to perform the essential duties of her position." ECF No. 13 at 16.

On May 23, 2019, Dr. Williams had a follow up evaluation with Plaintiff, after which he submitted a workability follow up evaluation report to the Department on May 30, 2019. *Id.* In his follow-up evaluation report, Dr. Williams advised the DPSCS that the psychologist who had performed Plaintiff's independent psychological evaluation "concluded that Plaintiff is not psychologically able to perform her essential job duties." *Id.* at 16-17. Dr. Williams also advised that, "[b]ased on the medical records reviewed, history provided by Plaintiff, and on physical examination today, it is [his] opinion that Plaintiff is unable to safely, consistently, and reliably perform her essential job duties with or without reasonable accommodations in the near or foreseeable future." *Id.* And so, Dr. Williams recommended that "the agency take the appropriate administrative actions concerning her employment status as a Correctional Officer II." ECF No. 13 at 17.

Plaintiff's Termination

On June 22, 2019, the Secretary of Public Safety and Correctional Services, Robert Green, terminated Plaintiff's employment with the DPSCS on the basis of the State Medical Director's assessment and recommendation. *Id.*

On April 3, 2020, Plaintiff received a written finding on her Charge of Discrimination from the MCRC, which found no probable cause. *Id.* After Plaintiff requested reconsideration, the MCRC denied her claims on May 8, 2020. *Id.* On September 28, 2020, the United States Equal Employment Opportunity Commission ("EEOC") mailed Plaintiff a Dismissal and Notice of Rights letter. *Id.*

### B.       Procedural Background

Plaintiff commenced this civil action on December 25, 2020.  ECF No. 1.  On March 1, 2021, Defendant filed a motion to dismiss this matter pursuant to Fed. R. Civ P. 12(b)(1) and (6). ECF No. 10.  On March 22, 2021, Plaintiff filed an amended complaint by leave of the Court. ECF No. 13.

On April 23, 2021, Defendant filed a motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof.  ECF No. 16.  On July 26, 2021, the Court issued a memorandum opinion denying Defendant's motion to dismiss.  ECF. No. 21.

On July 15, 2022, Defendant filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof.  ECF No. 49.  On August 23, 2022, Plaintiff filed a response in opposition to Defendant's motion.  ECF No. 55.  On September 9, 2022, Defendant filed a reply in support of its motion.  ECF No. 59.

Defendant's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.      LEGAL STANDARDS

### A.       Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See*

Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## B.      Title VII Claims

Title VII prohibits employment discrimination based upon race, color, religion, sex and national origin.  *See* 42 U.S.C. § 2000e.  Title VII requires that a plaintiff file a charge of discrimination with the EEOC, or a state enforcement agency recognized by the EEOC, before filing suit in this Court.  42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also, e.g.*, *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).  This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible."  *Miles*, 429 F.3d at 491.

In Maryland, a plaintiff must also file a charge of discrimination with the MCRC within 300 days of the alleged discriminatory events.[3]  42 U.S.C.A. §2000e-5(e)(1); *EEOC v. R&R*

---

[3] Title VII also requires that an aggrieved party file a charge of discrimination with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e–5(e)(1).  If a plaintiff "fails to file an administrative charge with the EEOC within one hundred eighty . . . days after an alleged discriminatory act occurs (or three hundred . . . days if the aggrieved person

*Ventures*, 244 F.3d 334, 338 n.1 (4th Cir. 2001); *see also Tinsley v. First Union National Bank*, 155 F. 3d 435, 439 (4th Cir. 1998).  This charge-filing requirement is a "precondition to the commencement of a Title VII action in court." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019).  The Supreme Court recently concluded that filing charges with the EEOC is not a jurisdictional requirement, but it is rather a "claim-processing rule that must be timely raised to come into play." *Id*.  And so, the Title VII charge-filing requirement is treated as an affirmative defense, which a defendant must raise.  *See, e.g., Spearman v. City of Annapolis*, No. CV JKB-21-1779, 2022 WL 316641, at *4–5 (D. Md. Feb. 1, 2022); *Sharpe v. Prince George's Cnty. Gov't, Civ*. No. TDC-17-3799, 2021 WL 928177, at *9 (D. Md. Mar. 11, 2021).

Under the continuing violation doctrine, any incidents that occur prior to the 300-day filing limitation are non-cognizable, unless a plaintiff can show that they are "part of the same actionable hostile work environment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002).  Relevant here, the United States Court of Appeals for the Fourth Circuit has addressed a hostile work environment claim based upon the continuing violation doctrine in *Gilliam v. S. Carolina Dept. Of Juv. Just.* and held that a Title VII plaintiff must show that the acts which occurred within the 300-day statutory window were a continuing part of discriminatory activity that began prior to the limitations period for the doctrine to apply. *Gilliam*, 474 F.3d at 140.  In that case, the Fourth Circuit found that the same supervisor had reprimanded the plaintiff for similar incidents, both inside and outside the limitations period.  *Id*. at 141-142.  And so, the Fourth Circuit concluded that the continuing violation doctrine applied, and all discriminatory acts complained of could be considered as part of one hostile work environment claim.  *Id*.

Once a complaint is timely filed, there are two methods for proving national origin discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999).  For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Id*. (quoting *Tuck*

presented the claim to a state deferral agency), then the EEOC charge is not considered timely filed." *Hentosh v. Old Dominion Univ*., 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)).

*v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)).  Under this method, "the plaintiff 'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'"  *Id.*

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*.  *See Tuck*, 973 F.2d at 374-75.  Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  A plaintiff may establish a *prima facie* case of disparate treatment on the basis of national origin under Title VII by showing that: (1) the plaintiff was a member of a protected class; (2) the plaintiff suffered an adverse employment action; (3) the plaintiff had satisfactory job performance; and (4) similarly situated employees outside the protected class received more favorable treatment.  *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).  The failure to demonstrate one of these required elements is fatal to a plaintiff's ability to establish a *prima facie* case.  *See Hemphill v. Aramark Corp.*, No. 12-1584, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), *aff'd,* 582 F. App'x 151 (4th Cir. 2014).

If a plaintiff establishes a *prima facie* case of discrimination, the burden of proof shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

### C.    Hostile Work Environment And Retaliation Claims

Plaintiff asserts a Title VII hostile work environment claim based upon national origin in this case.  To prove a hostile work environment claim based upon national origin, a plaintiff must allege workplace harassment that: "(1) was 'unwelcome;' (2) was based on her 'national origin;' (3) was 'sufficiently severe or pervasive to alter the conditions of employment and create an

abusive atmosphere;' and (4) was, on some basis, imputable to the employer.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).  Plaintiff must also present a particularized basis for alleging that the discriminatory conduct was because of her membership in a protected class.  *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 310 (D. Md. 2015).

Plaintiff also asserts a retaliation claim in this case.  To establish a *prima facie* case of retaliation in contravention of Title VII, Plaintiff must prove that:  "(1) she engaged in a protected activity," as well as "(2) her employer took an adverse employment action against her," and "(3) there was a causal link between the two events."  *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir.2005).  In this regard, the Fourth Circuit has held that "an employee is protected from retaliation when she opposes a hostile work environment that, although not fully formed, is in progress."  *Boyer-Liberto*, 786 F.3d at 282.

In addition, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in §2000e-2(m) . . . which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533 (2013).  A Title VII plaintiff may satisfy this requirement by showing that the adverse act bears sufficient temporal proximity to the protected activity.  *See, e.g., Clark County School Dist.v. Breeden*, 532 U.S. 268, 273-74 (2001).   In addition, a Title VII plaintiff "may state a *prima facie* case of causation by relying on evidence other than, or in addition to, temporal proximity where such evidence is probative of causation."  *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012) (citing cases); *see also, e.g., Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (holding that "other relevant evidence may be used to establish causation" where temporal proximity is missing).   And so, a causal connection "exists where the employer takes [an] adverse employment action against an employee shortly after learning of the protected activity."  *Price v. Thompson,* 380 F.3d 209, 213 (4th Cir.2004); *see also Johnson v. United Parcel Serv., Inc.*, No. RDB-14-4003, 2016 WL 4240072, at *6–7 (D. Md. Aug. 11, 2016) (observing that "the Supreme Court and the Fourth Circuit have repeatedly emphasized, temporal proximity must be 'very close' to show a causal connection").

IV.    ANALYSIS

The DPSCS has moved for summary judgment on the remaining claims in this action upon the grounds that:  (1) the Court should not consider Plaintiff's allegations based upon incidents that occurred before October 4, 2017, because these allegations are time-barred under Title VII; (2) the undisputed material facts show that Plaintiff has not adduced evidence to satisfy the elements of a hostile work environment claim, because the conduct complained of in this case is not attributable to Plaintiff's national origin, nor severe or pervasive; and (3) Plaintiff fails to adduce evidence to satisfy the elements of a retaliation claim, because she cannot show that she suffered a materially adverse act at the hands of her employer, or that there was a causal link between any such materially adverse act and her protected activity.  ECF No. 49 at 19-35.

In her response in opposition to Defendant's motion, Plaintiff counters that:  (1) her claims are not time-barred based upon the continuing violation doctrine; (2) the record evidence shows that she was harassed based upon her national origin and that this conduct was severe and pervasive; (3) the record evidence also shows that there is a causal link between her protected activity and the termination of her employment; and (4) the record evidence shows that the DPSCS had no legitimate basis for terminating her employment.  *Id*. at 28-37.  And so, Plaintiff requests that the Court deny the DPSCS's motion for summary judgment.  *Id*. at 38.

For the reasons set forth below, Plaintiff's claims based upon incidents that occurred before October 4, 2017, are not time-barred, because the continuing violation doctrine applies to her hostile work environment claim.  But the undisputed material facts in this case make clear that Plaintiff cannot establish a *prima facie* case of discrimination to prevail on either her hostile work environment or retaliation claims.  And so, the Court **GRANTS-in-PART** Defendant' s motion for summary judgment and **DISMISSES** this matter.  Fed. R. Civ. P. 56.

A.    **Plaintiff's Claims Based Upon Incidents That
        Occurred Before October 4, 2017, Are Not Time-Barred**

As an initial matter, the Court will consider the allegations and evidence in this case that are based upon incidents that occurred before October 4, 2017, in analyzing Plaintiff's hostile work environment claim.  Title VII requires that Plaintiff file a charge of discrimination with the MRCR within 300-days of the alleged discriminatory event.  42 U.S.C. § 200e-5(e)(1).  And so,

claims based upon incidents that occurred more than 300 days before a charge of discrimination is filed with the MCRC are generally time-barred under Title VII.  *Id*.

   The Court may, however, consider such evidence in analyzing a hostile work environment claim, if a Title VII plaintiff can show that the incidents that fall outside of this statute's limitations period are "part of the same actionable hostile work environment practice." *Gilliam*, 474 F.3d at 140.  And so, the Court may consider incidents that fall outside of the 300-day window applicable to this case, if Plaintiff can show that these incidents are part of the same actionable hostile work environment practice alleged in this case.

   It is undisputed that Plaintiff filed a charge of discrimination with the MCCR on July 31, 2018.  ECF No. 13 at 4.  And so, any alleged discriminatory conduct that occurred more than 300 days beforehand, i.e., prior to October 4, 2017, would fall outside of the statutory limitations period under Title VII.  ECF No. 10; *see also* 42 U.S.C. § 200e-5(e)(1); *R&R Ventures*, 244 F.3d at 338 n.1; *see also Tinsley*, 155 F. 3d at 439.

   But Plaintiff has shown that these earlier incidents of alleged workplace harassment are part of the same workplace harassment that she contends continued until she left the DPSCS in 2019.  In this regard, Plaintiff relies upon an incident that occurred in 2015 to show that she experienced a pattern of workplace harassment based upon her national origin.  ECF No. 13 at 5.  Specifically, Plaintiff alleges that she was subjected to derogatory comments at the workplace such as, "African bitch," "Go back to Africa," and "Y'all Africans came from your country to steal our jobs in America," from certain co-workers beginning in 2015.  *Id*.

   Plaintiff maintains that this harassment continued for the next three years.  But, she does not point to any evidence to support this allegation.  *See generally*, ECF No. 55.

   Plaintiff does, however, point to evidence that identifies a similar act of workplace harassment that occurred within the statutory period for this case.  ECF No. 55 at 2-3.  Notably, it is undisputed that, on December 31, 2017, several of Plaintiff's co-workers criticized Plaintiff for not being "American enough" and told Plaintiff that she needed to change her accent "so Americans can understand."  *Id*.

   Because Plaintiff relies upon evidence showing workplace harassment that occurred in 2015 that is quite similar to workplace harassment that she alleges occurred in December of 2017, to support her hostile work environment claim, the Court is satisfied that Plaintiff may rely

upon the continuing violation doctrine in this case.  *See Morgan*, 536 U.S. 101.  And so, the
Court will consider this evidence in analyzing Plaintiff's hostile work environment claim.

> **B.      Plaintiff Cannot Establish A Hostile Work Environment Claim**

Turning to the merits of Plaintiff's hostile work environment claim, the Court agrees with
the DPSCS that the undisputed material facts show that Plaintiff cannot establish a *prima facie*
case for a hostile work environment in this case.  To prevail on a hostile work environment claim
under Title VII, Plaintiff must show that there is: (1) unwelcome conduct; (2) that is based on her
national origin; (3) which is sufficiently severe or pervasive to alter the conditions of her
employment and to create an abusive work environment; and (4) which is imputable to the
DPSCS.  *Boyer-Liberto*, 786 F.3d at 277.  And so, Plaintiff must point to evidence to show,
among other things, that the harassment that she allegedly experienced while working at the
DPSCS was based upon her national origin and that this harassment was severe or pervasive.  *Id*.

The record evidence makes clear that Plaintiff cannot satisfy this burden for several
reasons.  First, the undisputed material facts show that Plaintiff cannot establish that the
workplace harassment that she experienced was due to her national origin.  While the record
evidence shows isolated incidents of harassment that appear to be based upon Plaintiff's national
origin, the bulk of the evidence in this case shows that the workplace harassment that Plaintiff
experienced was not due to her national origin.

For example, Plaintiff testified during her deposition that Officer Dukes and other
coworkers started to harass her in July of 2017.  ECF No. 49 at 5.  But, Plaintiff acknowledges
that this harassment was most likely retaliation for her having made a report about Officer
Dukes' workplace conduct, rather than due to her national origin.  *Id*. at 6.

It is also undisputed that Plaintiff was the subject of a threatening note that Major James
Faison reported receiving in his mailbox on December 19, 2017.  ECF No. 13 at 6.  But, again,
Plaintiff points to no evidence to show that this threatening note was due to her national origin.
*See generally* ECF Nos. 13 and 55.

Plaintiff also contends that she was "was harassed and threatened by staff" in June of
2018, when she was transferred to the Chesapeake Detention Facility.  ECF No. 13 at 11.  But,
again, there is no evidence before the Court to show that this alleged workplace harassment was
due to Plaintiff's national origin.  *See generally* ECF Nos. 13; 55.

The Court also observes that the evidence of national origin-based harassment that Plaintiff does identify is quite sparse. As discussed above, Plaintiff alleges that she experienced derogatory comments towards her, such as "African Bitch," "Go back to Africa," and "Y'all Africans came from your country and come steal our jobs here in America" in 2015. ECF No. 49 at 2-3. Plaintiff also points to an incident that occurred more than two years later, on December 31, 2017, to show that her co-workers criticized her for not being "American enough." ECF No. 55 at 2-3.

The Court agrees that such comments are evidence of national origin-based workplace harassment. But, Plaintiff points to no evidence to show how frequently this conduct occurred. ECF No. 13 at 5 (alleging generally that derogatory comments were made between August 2015 and January 31, 2018, by Officers Jefferson, Jenkins, and P. Williams without citation to the evidence). Given this, Plaintiff encounters great difficulty in establishing that the workplace harassment that she experienced at the DPSC was due to her national origin.

Second, to the extent that Plaintiff could establish national origin-based workplace harassment in this case, the undisputed material facts also make clear that she cannot show that this conduct was severe and pervasive to prevail on her hostile work environment claim. To prevail on a hostile work environment claim, Plaintiff must show, among other things, that the alleged discriminatory conduct is sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment. *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011).

But, as discussed above, Plaintiff fails to identify any evidence to show that the workplace harassment that involved references to her national origin occurred with such frequency and duration to create a hostile work environment. *See* ECF No. 49 at 2-3; ECF No. 55 at 2-3. In fact, Plaintiff points to no evidence to identify the specific coworkers that she alleges made these derogatory comments, or to show when the comments were made. *Id*.

Given this, the Court agrees with the DPSCS that Plaintiff cannot meet her burden to establish a *prima facie* case for a hostile work environment claim. *See Boyer-Liberto*, 786 F.3d at 277. And so, the Court **GRANTS** the DPSCS's motion for summary judgment on this claim. *See* Fed. R. Civ. P. 56.

**C.    Plaintiff Cannot Establish A Prima Facie Retaliation Claim**

Plaintiff's retaliation claim is also problematic.  To prove a Title VII retaliation claim, Plaintiff must establish that: (1) she engaged in activity protected under that statute; (2) she suffered a "materially adverse" act at the hands of the DPSCS; and (3) the DPSCS's "materially adverse" act was causally related to the protected activity.  *White*, 548 U.S. at 61.

In this regard, the Fourth Circuit has held that an employee can engage in protected activity by, filing a formal complaint against her employer, voicing her own opinions to bring attention to an employer's discriminatory activities, and making "complaints about suspected violations."  *Navy Fed. Credit Union*, 424 F.3d at 406 (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536-543-44 (4th Cir. 2003).  The Supreme Court has also explained that a "materially adverse" act at the hands of an employer, is not "limited to discriminatory actions that affect the terms and conditions of employment."  *White*, 548 U.S. at 64, 67-68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

In addition, the Supreme Court has articulated a strict but-for causation standard for retaliation claims.  *Nassar*, 570 U.S. at 360.  To establish but-for causation, Plaintiff may show that the materially adverse act bears sufficient temporal proximity to her protected activity.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).  The Supreme Court and the Fourth Circuit have also cautioned that the temporal proximity must be "very close" to show such a causal connection.  *See, e.g.*, *Horne v. Reznick Fedder & Silverman*, 154 Fed. App'x. 361, 364 (4th Cir. 2005); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. App'x. 229, 233 (4th Cir. 2006) (finding a gap of three to four months to be insufficient "to establish a causal connection by temporal proximity alone.").  In cases where the temporal proximity is "missing," "courts may look to the intervening period for other evidence of retaliatory animus."  *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

Here, the undisputed material facts show that Plaintiff cannot establish that she suffered a "materially adverse" act at the hands of the DPSCS for many of her retaliation claims.  Plaintiff alleges that the DPSCS retaliated against her for engaging in protected activity by:  (1) transferring her to the Chesapeake Detention Facility on June 6, 2018; (2) referring her for fitness-for-duty evaluations on February 21, 2018, and April 25, 2019; (3) placing her on administrative leave with pay in February 2018, and when she reported to Deputy Commissioner King's office in January 2019; and (4) terminating her employment on June 22, 2019.  ECF No. 55 at 31-37.

It is undisputed that Plaintiff engaged in protected activity when she filed an internal EEO complaint on January 12, 2018, and a charge of discrimination on July 31, 2018.  ECF No. 13 at 4; ECF No. 55 at 32.  The parties also agree that the termination of Plaintiff's employment on June 22, 2019, constitutes a materially adverse act by the DPSCS.  ECF No. 49 at 33-34; ECF No. 55 at 31-32.  But, the parties disagree about whether Plaintiff's transfer, fitness referrals, and placement on administrative leave constitute materially adverse acts.  ECF No. 49 at 31-35; ECF No. 55 at 31-38.

The Court agrees with the DPSCS that the evidence shows that Plaintiff's transfer, fitness-for-duty referrals, and placement on administrative leave are not materially adverse acts that can support a retaliation claim.  The Fourth Circuit has held that "a job reassignment may be "materially adverse depend[ing] upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Williams v. Prince William Cty., Va.*, 645 F. App'x 243, 245 (4th Cir. 2016).  In this case, the evidence shows that Plaintiff's transfer involved a reassignment to another facility located in the same Baltimore region and that this reassignment did not involve either a loss or reduction of Plaintiff's pay, a change in work hours, or a change to any other work benefits.  *Id.*

There is also no evidence before the Court to show that the two referrals of Plaintiff for a fitness-for-duty evaluation involved either a loss or reduction of her pay, or any change to Plaintiff's work benefits.  The evidence also shows that Plaintiff maintained her salary and other benefits during the time she was placed on administrative leave.  ECF No. 59 at 15.

More importantly, Plaintiff points to no evidence to show that her transfer, referrals for a fitness-for-duty evaluation and placement on administrative leave are materially adverse acts.  Nor is there any evidence before the Court of retaliatory animus related to these acts.  *See generally*, ECF Nos. 13; 55.

Indeed, while the Court is cognizant of the fact that these acts may have been inconvenient for, or perhaps embarrassing to, Plaintiff, the evidence simply does not show that a reasonable person in Plaintiff's position would consider these acts to be materially adverse.  And so, for this reason, the Court agrees with the DPSCS that Plaintiff cannot prevail on her retaliation claims based upon her transfer, fitness-for-duty referrals, and placement on administrative leave with pay.

The undisputed material facts also make clear that there is not a sufficient temporal proximity between either the filing of Plaintiff's internal EEO complaint, or the filing of Plaintiff's charge of discrimination, and her termination, for Plaintiff to prevail on her retaliation claim based upon the termination of her employment. *See generally* ECF Nos. 13 and 55. As this Court, the Fourth Circuit, and the Supreme Court have cautioned, temporal proximity between a protected activity and a materially adverse act must be very close to show a causal connection under Title VII. *See Johnson*, 2016 WL 4240072, at *6–7 (finding gap to be lengthy, far from showing a causal connection, and "negating the inference of discrimination."); *Price*, 380 F.3d at 213; *Breeden*, 532 U.S. at 273.

As discussed above, it is undisputed that Plaintiff engaged in protected activity when she filed an internal EEO complaint on January 12, 2018, and when she subsequently filed a Charge of Discrimination with the MCCR on July 31, 2018. ECF No. 13 at 4; ECF No. 55 at 32. It is also undisputed that the DPSCS subsequently terminated Plaintiff's employment on June 22, 2019. ECF No. 13 at 4; ECF No. 49 at 17.

The Court agrees with the DPSCS that there is not enough temporal proximity between these events to support Plaintiff's retaliation claim. Notably, there is an 18-month gap between the filing of Plaintiff's internal EEO complaint and her termination. There is also an 11-month gap between the filing of Plaintiff's Charge of Discrimination before the MCCR and her termination. Plaintiff also points to no other evidence in this case to show retaliatory animus related to her termination. *See generally*, ECF Nos. 13; 55.

Given this, the undisputed material facts make clear that Plaintiff can neither show that her transfer, fitness-for-duty referrals, and placement on administrative leave establish are materially adverse acts, nor that a causal connection exists between any of her protected activities and the termination of her employment with the DPSCS.[4]  And so, the Court also **GRANTS** the DPSCS's motion for summary judgment on Plaintiff's retaliation claims. *See* Fed. R. Civ. P. 56.

---

[4] While the Court does not reach this issue, the record before the Court also contains ample evidence to indicate that the termination of Plaintiff's employment was due to concerns that Plaintiff was unable to safely, consistently, and reliably perform her essential job duties following her second fitness-for-duty evaluation. ECF No. 49 at 35. And so, it appears that the DPSCS could show a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

**V.      CONCLUSION**

In sum, the undisputed material facts in this case show that Plaintiff's claims based upon incidents that occurred before October 4, 2017, are not time-barred under the continuing violation doctrine.  But the undisputed material facts in this case make clear that Plaintiff cannot establish a *prima facie* case for either a hostile work environment claim or a retaliation claim under Title VII.  And so, for these reasons, the Court:

1.      **GRANTS-in-PART** Defendant's motion for summary judgment; and

2.       **DISMISSES** this matter.


Judgment shall be entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**


                                                     /s/ Lydia Kay Griggsby
                                                     LYDIA KAY GRIGGSBY
                                                     United States District Judge